Doe, ex dem., Phillips' heirs, *against* Benjamin A. Porter, et al.

Appeal *from Phillips Circuit Court.*

All deeds are to be construed favorably, and as near the intention of the parties as possible, consistently with the rules of law.

The construction ought to be put on the entire deed, and every part of it, for the whole deed ought to stand together, if practicable, and every sentence and word of it be made to operate and take effect.

If two clauses in a deed stand in irreconcilable contradiction to each other, the first clause shall prevail, and the latter be regarded as inoperative ; and the law will construe that part of a deed to precede which ought to take precedence, no matter in what part of the instrument it may be found.

All deeds shall be taken most strongly against the grantor.

If, in a conveyance, the grantor fails to describe the thing intended to be granted, with sufficient certainty to ascertain its identity, the grantee takes nothing, by reason of the uncertainty of the grant.

The most general and usual terms of description employed in deeds, to ascertain the thing granted, are, first, quantity: second, course and distance: and third, artificial or natural objects and monuments. And, whenever a question arises as to the description, the terms or objects most certain and material will govern.

Therefore, quantity yields to course and distance ; and course and distance to artificial and natural objects.

If in a conveyance there are certain particulars once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant.

But when the description of the estate intended to be conveyed includes several particulars, all of which are necessary to ascertain the estate to be conveyed, no estate will pass except such as agrees to every part of the description.

Where there is error in the *principal* description of the thing intended to be granted, though there be no error in the addition, nothing will pass.

When lands are first described generally, and afterwards a particular description is added, that will restrain and limit the general description.

And where a deed conveys "a tract of land containing three hundred and sixty-six acres, being part of a six hundred and forty acre tract, &c., which said tract of land was conveyed by W. R. to S. P. by deed, bearing date," &c., the land conveyed is the same land conveyed in the deed so referred to, though it contain less than three hundred and sixty-six acres.

In this case *quantity* yields to *boundary*—and the *particular* description prevails over the *general ;* and a separate fraction of the 640 acre tract does not pass, although it would make up 366 acres.

The grantor and grantee, and all claiming under them, are bound by the recital of the prior deed ; and that recital definitely fixes and ascertains the precise quantity of land conveyed.

Absent, Dickinson, *Judge.*

This was an action of ejectment, brought by the heirs of Sylvanus Phillips for the recovery of a parcel or fraction of land containing three acres and eighty-two hundredths, as its quantity is stated in the de-

Doe, ex dem., Phillips' heirs, *against* Benjamin A. Porter.

claration; but which, owing to the abrasion of the Mississippi river, had been reduced, as shown by the plat, to three acres and seventy-one hundredths of an acre. The case was submitted to a jury on the general issue; and the facts and evidence in the case were agreed upon, and stated in writing, by the counsel for the parties; of which agreed case, a plat was a part, which must be referred to, in order fully to understand the facts, arguments, and decision.

The facts agreed upon were as follows: The tract or fraction sued for of 3.82 or 3.71 acres, is part of a tract of 640 acres, originally patented to William Russell, as assignee of Patrick Cassidy. The tract of six hundred and forty acres lies on the Mississippi river, is irregular in its shape, and is correctly delineated in the annexed plat, on which the fraction sued for is marked C.

By agreement between Russell and Sylvanus Phillips, the ancestor of the plaintiffs, made prior to 1820, about 275 acres of the tract were to be laid off to constitute the town of Helena; and 273.59 acres were actually by them laid off as said town, as represented in the plat, not including the three fractions A. B. and C. By deed dated Dec. 3, 1821, Russell conveyed to Phillips fraction A., containing 18 acres. By deed of July 13, 1825, acknowledged August 13, 1825, Russell conveyed to Phillips, among other lots and tracts of land, the same fraction of 18 acres, 335 lots in the town, and the 340 acres, the western part of the tract. And by deed of August 1, 1825, also acknowledged August 13, 1825, Russell conveyed to Phillips sundry lots in the town, and also fraction C., in controversy.

By deed dated October 1, 1830, Phillips conveyed to Austin Kendrick and Arnold Fisher, (through whom the defendants claimed,) a vast number of lots in the town, and tracts of land situated in different places; and among others, according to the language of the deed, " one other tract containing three hundred and sixty-six acres of land, being part of a six hundred and forty acre tract originally owned by Patrick Cassidy, and confirmed to William Russell under Patrick Cassidy, and patented by the President of the United States to William Russell under Patrick Cassidy, and to his heirs, by patent, recorded in the General Land Office, volume 4, pages 243, 244, and dated the 26th day of March, 1824, which said tract of land was conveyed by William Russell to Sylvanus Phillips, by deed bearing date the 13th of July, 1825, situate in the County of Phillips and Territory of Arkansas, adjacent to the town of Helena."

By deed of August 22, 1831, Kendrick and Fisher conveyed fraction C. to Porter, the defendant. All these deeds were admitted in evidence. It was admitted that the land in controversy was fraction C., and correctly described in the declaration; that the plaintiffs were the sole heirs of Phillips; that Phillips had full title to the land in controversy on the 1st of October, 1830; and it was agreed that if the jury should find upon a proper construction of the deed of October 1, 1830, fraction C. was included in the 366 acres conveyed by that deed, taking that deed in connection with all the other deeds referred to, and in connection also with the fact that all the western part of the

Doe, ex dem., Phillips' heirs, *against* Benjamin A. Porter, et al,

tract, containing 340 acres, with the three fractions A., B., and C., (all of which were on the 1st of October, 1830, owned by Phillips,) made up the quantity of 366.82; then they would find for the defendants: but that if they found, taking all those matters in connection, that fraction C. was not so included, then they would find for the plaintiff.

Various instructions were given and refused, which it is unnecessary to notice, further than to say that they declared the construction of the deed to be as contended for by the defendants.

The jury found for the defendants. The plaintiffs then moved for a new trial; and their motion being overruled, they appealed.

TRAPNALL & COCKE, for plaintiff in error:

The universally acknowledged rule, in the construction of a deed, is, that it must be as near to the minds and apparent intention of the parties as may be.

Every deed shall inure as much as may be according to the intention of the parties. *Jackson vs. Clark*, 7 *J. R.* 223.

The intention of Phillips must be inferred from the language used to express it. The direct and special reference to the deed of the 13th July, as embracing the identical tract intended to be conveyed, shows conclusively that the land acquired by that deed, and that alone, formed the subject matter of the grant on the trust deed.

If it had been the intention of Phillips to convey his entire interest, remaining of the 640 acres, would he have made this pointed and emphatic reference to the deed of the 13th of July? He well knew there were two fractions not embraced by that deed, but to which he had acquired title by a subsequent deed, bearing date the first of August, 1825; and is not the inference, under this state of facts, irresistible, that Phillips did not intend to include, in the trust deed, the two fractions to which he acquired title by the deed of the 1st of August—that he meant to convey only the land comprehended by the deed of the 13th of July? The principle is well settled, that where one deed refers to another, as that by which the grantor derived title to the land conveyed to the grantee, the deed so referred to will be regarded as a material feature in the description, and will

be looked to to clear up any obscurity or uncertainty which may exist in any other parts of the description. *Jackson vs. Ranson*, 18 *J. R.* 107; *Jackson vs. Moore*, 6 *Cowen* 721, *note*.

Where a purchaser cannot make out a title but by a deed which leads him to a fact material, he will not be deemed a purchaser without notice of that fact. *Johnson vs. Gwathmey*, 4 *Lit.* 317; *Ward vs. Trotter*, 2 *Monroe* 4; *Cuyler vs. Bradt*, 2 *Caines* 327.

General expressions in a deed of " all estate, real, personal and mixed," may be restrained by a schedule, to which reference is made; *Scott vs. Coleman*, 5 *Lit.* 353. The recital of an agreement in a deed is, in law, equivalent to an agreement made by the deed. *Bank of Kentucky vs. Vance's Adm'rs*, 4 *Lit.* 172. Recitals in a deed of land are evidence against the party making them, or any *person claiming under him.* They estop parties and privies in blood and estate, and in law. A person entering into possession of land, under a party thus bound by a recital, is a privy, in law, of such party, and is bound by whatever would conclude or affect him. *Jackson vs. Parkhurst and Guerney*, 9 *Wend.* 209; 2 *P. W'ms, Annandale vs. Harris* 434; *Ford vs. Grey*, 1 *Salk.* 286; *Carver vs. Jackson*, 4 *Peters;* in which the effect of recitals in a deed is fully examined, and in which the court declare that the recital constitutes a part of the title, that it works upon the interest in the land, and creates an estoppel which runs with the land against all persons in privity with the grantor. It is as much a muniment of the title as any covenant therein, running with the land. Kendrick and Fisher, and all those who claim under them, are presumed, in law, to have a knowledge of the deed of the 13th of July, its contents, and the identical lands therein embraced for the very deed under which they derive title, expressly refers to it, and declares that the tract of land, therein conveyed, is the same to which Phillips acquired title from Russell, by virtue of that deed. The recital deed is a part of the muniments of their title, and defines and marks out the *particular tract* intended to be conveyed by the grantor. Knowing, then, as the defendants, in law, are presumed to do, the contents of this deed, and the exact locality and boundary of the lands therein embraced, with what pretence of justice or legal right can they now claim lands not included in that deed, and to

which Phillips acquired title by other deeds of a subsequent date? The fact that the trust deed calls for a greater number of acres than is contained in the deed of the 13th of July, will not give to the defendants a right to make up the deficiency out of the lands embraced in the deed of the 1st of August, and which are not referred to or embraced in the trust deed. It was not the intention of the deed of the 1st of October, 1830, to convey a precise and definite *number of acres*, but a *certain tract of land.* The deed expressly states the thing to be conveyed to be "one other tract." The tract, then, is the subject matter of the conveyance, and the number of acres, the prior conveyances, patent and deed referred to, are all descriptive circumstances, inserted to identify the tract and define its boundaries and location. The rule of construction, sanctioned alike by authority and common sense, is, that where there is a contradiction in the description, we ought to take that which is the most stable and certain. *Jackson vs. Loomis,* 18 *J. R.* 87. If there are certain particulars once sufficiently ascertained which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant. *Idem* 85; *Jackson vs. Clark,* 7 *J. R.* 223; *Loomis vs. Jackson,* 19 *J. R.* 449; *Worthington, et al., ex'rs, vs. Hylyer, et al.,* 4 *Mass.* 205.

Where lands are first described generally, and afterwards a particular description is added, that shall restrain the general words. 4 *Com. Dig., Fait, E.* 4, *p.* 289, *note b.* A thing certain may be diminished, though not wholly made void. *Stukeley vs. Butler, Hob.* 171, *b.* To what parts of this description, then, are we to look for those features which give most stability and certainty to the grant, and best illustrate the intention of the parties? To the description by quantity, or that contained in the reference to the deed of July the 13th. Keeping in view the important rule, that those features of the description which mark out and define with most certainty and particularity the land conveyed, will always be preferred to those of a more general and indefinite character, can the court entertain a moment's doubt as to which shall be preferred and which rejected? By reference to the deed of the 13th of July, such descriptions are given of *the tract* as leave no doubt of its identity and boundary. The deed of

the first of October reciting the deed of the 13th of July, and declaring that the tract which the grantor was conveying is the very same to which he derived title by that deed, will have the same effect as if the calls and descriptions of the recited deed had been inserted verbatim in the trust deed of October. We have, then, in support of the position, that the fraction in controversy was not conveyed by the trust deed, all the weight and force that a certain and definite description of the land can impart. For the rule *id certum est quod certum reddi potest* will here apply, and we have also the farther advantage, that the description for which we contend is true, that the lands in the deed of the 13th of July are the same embraced in the patent; it is, however, false that they contain three hundred and sixty-six acres. All the authorities concur in regarding the *description by the number of acres* as the lowest kind of description. In *Jackson vs. Barringer*, 15 *J. R.* 472, the court say, "it is a well settled rule, that when a piece of land is conveyed by metes and bounds, or *any other certain description*, this will control the quantity, although not correctly stated in the deed." *Jackson vs. Wilkinson*, 17 *J. R.* 147; *Powell vs. Clark*, 5 *Mas.* 357. When the quantity is mentioned in addition to the description of the boundaries or *other certain designation of the land*, without an *express covenant that it contains that quantity, the whole is considered* as mere *description*. The quantity being the least certain part of the description must yield to the boundaries or number, if they do not agree. In construing deeds, effect is to be given to every part of the description, if practicable; but if the thing, intended to be granted, appears clearly and satisfactorily from *any part of the description*, and other circumstances of description are mentioned which are not applicable to that thing, the grant will not be defeated, but those circumstances will be rejected as false or mistaken. What is most material and most certain in a description, shall prevail over that which is less material and less certain. *Jackson vs. Moore*, 6 *Cowen* 717. The enumeration of quantity is not of the essence of the contract, it is merely matter of description. *Mann and Toles vs. Pierson*, 2 *J. R.* 40. The description by quantity, must, from its very nature, be vague and indefinite, and unless taken in connection with other circumstances of the description fixing the locality of the land, it can, of

itself, ascertain nothing. And in a case already cited, the learned Judge, in conclusion, says, "I will only add, that, in my own experience, and I may say with propriety, in the universal opinion of conveyancers, enumeration of quantity, after a description of the subject, is superfluous and immaterial, and in every view only matter of description." But it may be said that the fact of the quantity of acres being first mentioned in the description, gives to that circumstance a controlling influence; but the court will remark that the whole clause is one continuous sentence, and it is not material what circumstance is first mentioned, for the intention of the parties is to be collected from the whole, and not from any one particular. In Doughty's case, referred to in *Stukeley vs. Butler, Hobart* 171, the Duke of Northumberland was seized of divers houses and cottages in the parish of Saint Sepulchres, London, and bargained and sold all his tenements in the parish of St. Andrews, Holborn, in the tenure of William Gardiner, unto Lou Lea, and the grant was judged void, though the houses were in the tenure of Gardiner; it was added, in in that case, that the court was of opinion that if he had begun with the tenure of Gardiner, which was true, and ended with the parish mistaken, that the grant had been good by the rule, *utile per inutile non vitiatur.* "I hold it," says the learned Judge in reviewing that case, "plain to the contrary, for the several circumstances and descriptions circumscribe and ascertain the grant; and it is a good rule, *incivile est, nisi tota sententia perspecta, de aliqua parte judicare;*" which opinion was fully sustained in Doddington's case, to which reference is also made, and in which it was adjudged that the first part of the description, as it was placed in the patent, was true, yet the latter part being false marred all, even if it were the grant of a a common person; and the Judge very truly remarks that, in one sentence it is vain to imagine one part before another; for though words can neither be spoken or written at once, yet the mind of the author comprehends them at once, which gives *vitam et modum* to the sentence. It makes no difference, therefore, in what part of the sentence the quantity of acres is mentioned, so that it be inserted as matter of description, and it is always so regarded (as will be seen

4

in the cases above cited,) unless there are direct and express cove-- nants to convey a particular quantity.

No peculiar force, therefore, is to be given to the number of acres because of its position in the sentence. No matter where it may ap- pear as a circumstance of description, it will be subject to the same rules before adverted to; and that which is most material and most cer- tain in the description, will take precedence in the construction of the deed, although it may appear after in the sentence. The important and material point of enquiry is not to ascertain the quantity in the tract, but to ascertain and identify the tract itself. The quantity is descriptive of the tract, and not the tract of the quantity. If there is any thing in the deed of the 1st of October which manifestly indi-- cates that it was the intention of Phillips to convey only the fraction A, and the 340 acres west of the town of Helena, then, although the deed may call for a greater number of acres, nothing more will pass. And that such was his intention is abundantly evident from the fact of his referring to the deed of the 13th July, in which those parcels were conveyed to him. In a note to the case of *Jackson vs. Moore,* 6 *Cowen* 720, already referred to, it is stated, " when a man has a ma- nor called A, extending into the several parishes of B and C, and he grants all his manor in the parish of B, the words, ' in the parish of B' would be restrictive, and so much of the manor as *is situate in the* parish of B would pass." Now Phillips has several fractions or parcels of land in the 640 tract patented to Russell, to which he acquired title by two deeds, one bearing date of the 13th of July, and the other the first of August, 1825; and he conveys one tract, part of the 640 acre tract, patented to Russell, which said tract he expressly states to be the same conveyed to him by Russell, by deed bearing date the 13th of July. Can the court doubt but these latter are words of restriction, and does it not present a state of facts strikingly analogous to the precedent above quoted? In the same note it is far- ther stated, when there is a grant of all lands which were of the in- heritance of A B, and conveyed by C D, the lands will not pass unless they were conveyed by C D, and also were the inheritance of A B. And so we contend that no lands pass by the clause of the

Doe, ex dem., Phillips' heirs, *against* Benjamin A. Porter, et al.

trust deed under consideration, unless they were contained in the 640 acres patented to William Russell, and also included in the deed, of the 13th July, from Russell to Phillips. It is evident that the reference to this last deed was inserted to repel the idea that the fractions acquired by the deed of August, were included in the trust deed; no other consistent and rational construction could be put upon it. The description by number of acres does not correctly describe the several tracts included in the trust deed even according to the construction of the defendants, for these tracts together make up the quantity of 366.82 acres, and the deed calls for only 366. And if, according to the view we take of it, the deed conveys a specific number of acres, and not a certain tract, then they can claim no more than the exact number of acres of mentioned in the deed. And so large a fraction as 82–100 of an acre, situated in what is now nearly the heart of the town of Helena, is worth a large sum of money; and to this, if the conveyance is for a specific number of acres, the heirs of Phillips are clearly entitled; but here we are met at the very threshold with the difficulty of determining this: out of which one of those several fractions shall this 82–100 acre be stricken off? And even could we fix upon the parcel, there is the further difficulty of determining from which side of the parcel this small fraction shall be taken. In this view of it the deed would be uncertain and vague; and the court should incline to that description which would define and mark out the object of the grant with precision and certainty.

PIKE, *Contra:*

Of the several rules laid down as governing in the construction of deeds, there are two which need to be applied in this case, and bear directly upon the question presented to the court.

1st. All deeds shall be construed as near the apparent intention of the parties as possible, consistent with the rules of law.

2d. If there be room for two constructions, that shall be taken which makes most strongly against the grantor.

See as to the first rule, *Bridge vs. Wellington,* 1 *Mass.* 219; *Worthington, et al., vs. Hylyer, et al.,* 4 *Mass.* 205; *Bott vs. Burrell,* 11 *Mass.* 163; *Hatch vs. Dwight,* 17 *Mass.* 289; *Ludlow vs. Meyer,* 3 *J.*

*R.* 383; *Troop vs. Blodget,* 16 *J. R.* 172; *Cholmondeley vs. Clinton,* 2 *Ba. A.* 625.

As to the second; *Troup vs. Blodget,* 16 *J. R.* 172; *Adams vs. Frothingham,* 3 *Mass.* 352; *Watson vs. Boylston,* 5 *Mass.* 411.

The principle is admitted, that " the description of land in a deed by specific boundaries is conclusive as to the quantity; and if the quantity be expressed as a part of the description, and is incorrectly stated, it will be inoperative: and it is immaterial whether the quantity contained within the specified boundaries is greater or less than the quantity expressed."

But as the appellants rely almost exclusively upon this principle, it will be necessary to examine some of the cases in which it is laid down; and so ascertain whether it is applicable in the present instance.

In *Powell vs. Clark,* 5 *Mass.* 355, PARSONS, C. J., said that " each tract is definitely limited, and any surveyor could easily ascertain its contents, and the plaintiff might have known the quantity of land contained within the limits described, before he concluded his purchase, by taking the proper measures. In his purchase he must be considered as relying on the boundaries described, and not on the contents mentioned. In a conveyance of land by deed, in which the land is certainly bounded, it is very immaterial whether any, and what, quantity is expressed, for the description by the boundaries is conclusive."

So in *Jackson vs. Defendorf,* 1 *Caines R.* 493, the deed was for " one certain lot of land, known as lot No. 10, in the new patent, &c., bounded and described as can be more fully made to appear by a map of said patent; the said lot No. 10 said to contain 200 acres, more or less." The court said, " the intent was to convey the whole lot. It referred to the map. When the quantity of acres is mentioned, it is only description of the lot according to common acceptation."

So in *Lodge's lessee vs. Lee,* 6 *Cranch.* 237, a grant of a certain whole island was held to convey the whole, though the courses, distances, and quantity mentioned in the deed would exclude part of the island.

Doe, ex dem., Phillips' heirs, *against* Benjamin Porter, et. al.

These three cases embody the rule laid down in all the cases upon the point: and the rule, as laid down, may be definitely stated to be, that where it plainly appears to have been the intention of the grantor to convey a whole tract or lot, known by a certain name, definitely specified on a map or plot, or described with certainty by courses and distances, or boundaries, there, though the courses and distances, boundaries and quantity given, do not agree with the specified tract or lot as it exists; or where the quantity does not agree with the courses and distances or boundaries specified; the grantee will take according to the intention, without regard to the quantity mentioned. *Mann vs. Pearson*, 2 *J. R.* 27; *Jackson vs. Barringer*, 15 *J. R.* 471; *Jackson vs. Wilkinson*, 17 *J. R.* 146; *Jackson vs. Freer*, 17 *J. R.* 29; *Dogan vs. Seekright*, 4 *Hen. and Mun.* 125; *Jackson vs. Moore*, 6 *Cow.* 717.

And the rule is the same though neither courses nor distances correspond with specified boundaries. The boundaries will govern. *Pernam vs. Wead.*, 6 *Mass.* 131; *Gerrish vs. Bearce*, 11 *Mass.* 193; *Howe vs. Bass*, 2 *Mass.* 380; *Aiken vs. Sanford*, 5 *Mass.* 497.

But though quantity always yields, yet I apprehend no case goes so far as to decide that the quantity called for never governs; or that if A sells so many acres in such tract, without further specification, and has just that number of acres in the tract, and no more, the grant would not be operative, and that the grantee would not take by acres.

The principle is also admitted that where a purchaser cannot make out his title except by a deed leading him to a fact material, he will not be deemed in equity a purchaser without notice. But we are utterly unable to perceive what possible bearing this principle can have upon the present. It is laid down in cases where there is a question of fraud or lien, and where the conscience of a purchaser is to be affected; but if it is claimed as being applicable to this case, it must certainly be also assumed that, no matter how certainly the land may be described, whether by numbers or metes and bounds, yet if subsequently a reference is made to a prior deed; that deed will control every thing, and the purchaser will only take in accordance with it. It is certainly a novel idea to press into service, in construing a deed between grantor and grantee, a decision made in equity between parties stand-

ing in a different attitude, and upon the subject of fraud or lien; and to assume that because if a purchaser, claiming to have purchased *bona fide* and without notice, cannot make out his title without reference to a deed leading him to a fact material, as of a charge on the estate, he will be deemed against creditors, &c., to be a purchaser with notice of such fact; therefore, if a grantor mistakes, in referring to a previous deed to himself, the contents and tenor of such deed, the grantee shall be bound by the mistake, as against the grantor himself.

The authorities quoted to show the effect of recitals are not denied to be correct, but it is admitted that they do conclusively establish the principle that a recital in a deed, lease, or release, is conclusive and an estoppel against the grantor, lessor or releasor, and all persons claiming under them by privity of estate; but how the conclusion is thence deduced, that the recital is also conclusive against the grantee, or a person not privy in estate, we do not hazard a conjecture.

The cases referred to in 6 *Cow.* 721, and *Hob.* 171, will be considered hereafter.

In the present case, the land is first conveyed by quantity—so many acres in such a tract. The grantor did not, as in the cases quoted in support of the two rules which we first laid down, first grant a certain tract of land; nor did he first grant land by certain courses and distances, or included within certain boundaries—and then add that the lands so conveyed contained so many acres. Not so. He first conveys so many acres of land, and then refers to a certain deed, (if he refers to it at all in reference to the grant,) to explain what land he intended to convey.

Before laying down the rules, which, as we conceive, govern this case, we refer the court, in order to present our views fully and intelligibly to them, to the case stated, the deeds and the diagram in this case, by which the following facts will appear.

The whole tract of 640 acres, of which the land in dispute is a small fraction, was confirmed by the United States to William Russell, as assignee of Patrick Cassidy. Phillips had become part owner of portions of it before the patent issued; and upon the issuance of

the patent in 1824, Russell again conveyed to Phillips, in order to perfect his title, such portions of it as he had conveyed before the patent issued.

For the purposes of this case we have only to examine the situation of the whole tract on the 1st of October, 1830. 273.59 acres of it had been laid off by Russell and Phillips, as joint proprietors, and constituted the town of Helena. With this portion we have nothing to do. Phillips himself owned on the 1st of October, 1825, all the residue of the tract. That residue consisted of 340 acres lying west of the town. Fraction A, on the diagram, containing 18 acres, fraction B containing 5 acres, and fraction C containing 3.82 acres, making that residue 366.82 acres. The 340 acres west, and fraction A, were conveyed by Russell to Phillips, by deed of July 13, 1825, together with 335 lots in the town. The two fractions B and C, the latter of which is in dispute, were conveyed by Russell to Phillips by deed of August 1st, 1825, and both these last mentioned deeds were acknowledged on the same day, to wit: August 13, 1825.

Phillips, an original proprietor of the town, knew how many acres there were in the town, and how many in the whole residue of the tract. He knew that the tract west of the town contained but 340 acres, and he further knew that he owned the whole tract except the town, and that the residue of the tract not included in the town made the quantity of 366 acres—rejecting the fraction of an acre, which at that day no man thought of mentioning in a deed. He therefore conveys, by deed of October 1, 1830, to Kendrick and Fisher, 366 acres of land, in that particular tract, which was all he had to convey, and just what he had to convey, in the tract. Had he stopped here the description of the land conveyed would have been certain enough, for he would have conveyed the whole tract except the town, and no one would have doubted but that the grant included the fraction in dispute. But it is assumed that he subsequently refers to the land which he was conveying, (which we shall hereafter dispute,) and adds, " which said tract of land was conveyed by William Russell to Sylvanus Phillips, by deed bearing date July 13, 1825." And it is contended that only the land described and specified in that particular deed passed by the grant.

The court will not fail to remark that no tract is conveyed by that deed, containing 366 acres; but it conveys two tracts, one of 340, and the other of 18 acres, and 335 lots. When Phillips granted " the tract" of 366 acres named in that deed, did he mean the tract of 340 acres, or the fraction of 18 acres, or the 335 lots, or any two of them, or all together? For if the construction contended for be correct, the court can presume one of these just as well as the other. And therefore the reference to the deed of July 13th, 1825, if that reference restricted the prior grant, did not render that certain, which was uncertain before, but directly the reverse.

The court will also remark, that the deed of July 13th, was not acknowledged until August 15th, the same day on which the deed of August 1st was acknowledged; so that it may naturally be contended, that as Phillips, in making a conveyance, manifestly intended to cover all his property, by a voluminous deed, he might easily mistake or forget the date of a prior deed, and refer to both deeds, from the same person, and acknowledged the same day as being one deed of a particular date.

Having premised so much, we may now proceed to deduce from the authorities the precise rule of law applicable to this case. For it all depends upon the simple question, whether the clause referring to the deed of July 13, (if it relate back to the grant at all,) is a *limitation* and *restriction* of the previous description of the premises granted, or merely an *explanation*.

The general rule is laid down in Dowtie's case, 3 *Co.* 10, and *Dyer* 292 *b.*, as in *Com. Dig. Fait* 4, to be, that if the description of the tenements granted, comprehends several particulars and circumstances in the same sentence, all ought to be true, otherwise the grant will be void; and the instance given us, if a man convey " all his tenements in the parish of B, in the tenure of A," there nothing passes, unless the tenements are both in the parish and tenure mentioned.

And this rule depends upon the common construction of such a sentence, according to the rules of grammar. For where the expression is, " I convey to you all my lands in the city of Little Rock, in the county of Pulaski," the meaning of the sentence is, that I convey

to you such lands as I have in that city and county—and if the lands are in the county, but not in the city, nothing passes.

So in *Dyer* 292 *b.*, an instance is given, as where I convey "the manor of A in the county of B." If there be no such manor in that county, but there be such an one in the county of C, nothing passes. And for the reason that it is all one short, connected sentence—it is all description, and no part of it is added as explanation. And because if I have lands both in the manor of A and the county of B, and the manor is not in that county, it is utterly uncertain which lands should pass by the grant.

A remarkably clear illustration of the rule is given in *Doddington's case*, 2 Co. 33. The grant there was of "*omnia illa messuagia in tenura Johannis Brown, scituat' in Well' nuper prioratui de W. specttant';*" and in truth, the lands lay in D. And it was adjudged, that " because the grant is general, and is restrained to a certain town, the grantee shall not have any lands out of the town to which the generality of the grant doth refer." " And this case," it was resolved, " is the stronger, by reason of this pronoun (*illa*) for '*omnia illa messuagia,*' *&c.* makes such a necessary reference, as well to the town as to the tenure of John Brown, that if one or the other fail, the general grant is void: for (*illa*) is not satisfied till the sentence is ended, and (*illa*) governs all the sentence till the full stop.

So in *Bozoun's case,* 4 Co. 35, where the grant was, of " *totam illam portionem* of tithes in Longham, in county of Norfolk, *with* all all other tithes whatever in Longham in said county of Norfolk, then or lately in the occupation of John Corbet;" it was decided that the whole sentence was to be taken together; " because the pronoun (*illam*) shows plainly that there ought to be words subsequent to reduce and explain what portion should be granted; *s. c.* that which was in the occupation of Corbet; and, therefore, this pronoun (*illam*) is not satisfied till it is come to the full end of the sentence, and that, with the conjunction (*with*) couples the whole together, and makes the subsequent part of the sentence refer to the former."

Having thus explained the general rule, we now arrive at the rules which govern the present case.

Comyn lays it down, in his *Digest, Fait E.*, 4, as follows: "If the thing described is sufficiently ascertained, it is sufficient, though all the particulars are not true: as if a man conveys his house in B, which was Thomas Cotton's. And the reason is that the words "which was" show the last clause to be an explanation, and not a component part of the description.

So Lord BACON says, *Law Tracts*, 102, "*veritas nominis tollit errorem demonstrationis.*" And, therefore, he says, if lands are described in the first instance by their proper names, as "the manor of Dale;" or by their abuttals, as, "a close of pasture bounded on the north by, &c.;" or if the general boundary is mentioned, and the grantor has no other lands in the same precinct; or if the lands are described by their appendancy to other lands more notorious, as, parcel of the manor of A: in all these cases, if there be an error in any addition made to these names or descriptions, it will have no effect.

The present case comes precisely within the rule as laid down by Lord BACON—for in the grant to Kendrick and Fisher, the general boundary is mentioned, and Phillips had no other land, except town lots, in the tract—and, moreover, it is described as "appendant to a tract more notorious."

So in *Plowd.* 191, where a lease was made of "all that the farm of Brosley, then in the tenure and occupation of R. Wilcox," which was not the fact, the court said that the word "farm" had a certainty in itself; and when the description went further, and said, "in the tenure and occupation of Wilcox," this was of no effect; for though it was not in his occupation, yet it should pass; because there was a certainty in the thing devised, viz: the farm of Brosley: and so another certainty put to a thing which was certain enough before, was of no manner of effect.

The case of *Stukeley vs. Butler, Hob.* 168, referred to with so much confidence by the appellants, was upon a deed, whereby the grantor sold "all the trees growing upon a certain manor, to wit: the trees in five certain groves named therein," which five groves did not include all the trees on the manor; and the question was, whether the latter clause should restrict the general grant; and it was held that it should

not, but was void. And one reason assigned therefor is, " that in grants of particulars, sufficiently once ascertained, another mistaking will not frustrate, though it be false."

The reference to *Stukely vs. Butler* seems to be for the purpose of showing that it is no importance, as to this question, that quantity is named first, instead of last. And to this point *Dowtie's case* and *Doddington's case*, referred to in Hobart, are quoted. We have already mentioned both, and shall return to Dowtie's case yet again. At present it is only necessary to observe that it was upon a grant " of all my tenements in the parish of St. Andrews, Holborn, in the tenure of William Gardiner;" and as the grantor had no houses in the parish, the grant was adjudged void. COKE thought it would have stood, if the tenure of Gardiner had been first named, because then the true part of the description would have come first. He was clearly wrong in this, as Hobart says, and according to his own restrictions in other cases. It is all one description, in one short sentence, and must all stand or fall together. But neither *Stukely vs. Butler*, nor *Doddington's case*, sustain the position assumed by the appellants upon strength of them: because the question in both cases was, whether the *whole grant* were void or not; and not whether the latter clause should limit or explain the former.

The principle which does apply where the whole is not void, is, as declared in the *Bishop of Ely's case*, Shep. Touch. 88, " that where there are two clauses in a deed, repugnant to each other, the first shall be received, and the last rejected, except there be some special reason to the contrary." So in *Cother vs. Merrick*, Hardres, 94.

So in *Mason vs. Chambers*, Cro. Jac. 34, POPHAM, C. J., said, "if the Queen should let the manor of D *quod quidem manerium* is of the annuvalue of five pounds, where it is not let for such a rent, and the rent or value is misrecited, yet the lease is good, because there is a certainty before, and the addition of *quod quidem*," &c. is not material. But if she let " the manor of D, of the annual rent value of five pounds," which is intended to be of such a value, and is let at a greater rent, or appears upon record to be of a greater value, it is void, because in the first case she intended to pass the manor, and the addition of the *quod quidem*, &c. is but to add another certainty: but it is in one sen-

tence, that it is of such a value, and that *in tali parte*, her intent appears not to grant a thing above such a value; and therefore it is otherwise."

The position here assumed, as to the grant of the manor of D, of such a value," is doubtless correct, in the case of a grant by the Crown, because in such case the grant is not taken most strongly against the grantor—and the nice distinction drawn by the court shows how they would have decided even the last point, had it been a grant by an individual.

So in the present case, if we now delay for a moment, and view it by the light of the authorities already before us, there is sufficient certainty in the first part of the grant. It is of 366 acres of land, part of the Cassidy tract. Phillips granted the exact number of acres owned by him in the tract: he had so much which he could grant, and no more, and he granted all. If the grant had stopped there, could it have been ascertained what land passed by the grant? most certainly; and if so, there was a certainty. The subsequent expression, (if referring to the grant at all,) is not a part of the sentence connected with the first clause by a conjunction. It is an *explanation*. It is adding certainty to what was certain enough before; and it may therefore be rejected. Had the grant been, of " the land conveyed to me by deed of July 13th, containing so many acres;" then the grantee would have taken according to the deed, with regard to quantity—but as it is, the first part of the grant always governs, if it is certain enough without the addition. See 4 *Cruise* 365–6.

So in *Dowtie's case*, 2 *Co.* 10, which we first quoted, and which is also relied upon by the appellants, the court after laying down the general rule as we first stated it, go on to say, " but otherwise had it been, if a true certainty had been in the first place, as if he had bargained and sold 'the tenements,' &c., in the tenure of William Gardiner, in the parish of St. Andrew. However, there it was agreed that the tenements should pass well enough, notwithstanding the addition of the falsity: for *utile per inutile non vitiatur*."

So in *Dyer* 50 *b.*, it is laid down by HARWOOD, Attorney General, that " if I release all the right which I have in " White Acre, and name the land certain which I bought of such a man, and in truth I

bought it of another, yet, because the land is certainly named at first, the release is good, notwithstanding the misrecital afterwards; but where it is made general, it is otherwise." As, for instance, if it had been, " all my land which I bought of such a man," having bought none of him, in that case there would have been no basis of certainty laid, to have " given effect by reference to the other words." And see *Banks vs. Denshire*, 1 *Ves. Sr.* 63; *and Roe vs. Vernon and Vyse*, 5 *East*, 40.

We may now proceed to a further modification of the rule, and that is that " where words of addition are mistaken, and contrary to the real fact, they will not operate as a restriction on the preceding words," 4 *Cruise*, 325; which is exemplified as follows: " a corporation demised in these words—all that their glebe land lying in Chesterton, viz: 78 acres of land, and also the demesnes of the said 78 acres, with all the tithes of the said Parish of Chesterton, and also the tithes of the said 78 acres; all which lately were in the occupation of Margaret Peto, deceased." The tithes of the land demised never were in the occupation of Margaret Peto, and the question was whether they passed to the lessee. It was urged for the plaintiff that the words " in the occupation of M. Peto," were a clause of restriction, which showed an intent that nothing should pass but what was in her occupation. But all the Judges held the lease good, and no restriction of the first words, because there were three distinct clauses before:—1st. The grant of the 78 acres of glebe. 2d. The grant of the tithes predial and personal; and 3d. The grant of the tithes of the 78 acres of glebe; which were all distinct several clauses by themselves. And the clause, " all which," &c., did not depend on any of them; for the words " which were," &c., was a restriction only when the clause was general, and was all but one and the same sentence, and not ended or certain before the end of the sentence. But where the clause was not in one entire sentence, but distinct and disjointed from the other, as here it was, there could not be any restriction. Also, this being in the case of a common person, (that is, the King not being a party,) addition of a false thing, viz: false possession, shall never hurt the grant: for the addition of a falsity shall never hurt where there is any manner of certainty before. Wherefore they all con-

cluded that the grant was good, and observed that though the words " which were in the tenure of M. P.," when they are in one and the same sentence, may be construed to be a restriction, yet in these words " all which were," &c., the word " all," so disjoined, could not be a restriction, but an explanation. *Swift vs. Eyres, Cro. Car.* 546.

The rule is then thus defined by Cruise: " When the lands are first described generally, and afterwards a particular description is added, that shall restrain the general words. Thus, if a man grant " all his lands in D, which he has by gift and feoffment of J. S." nothing will pass but lands of the gift and feoffment of J. S. But if he grant all his lands in D called N, which was the estate of J. S. there the lands called N shall pass, though they never were the estate of J. S." 4 *Cruise*, 337.

The distinction here laid down, though at first view somewhat nice, is perfectly sound, and sustained as well by reason as authority. For if I convey to you " all my lots in Little Rock which I hold by deed from A B," I mean all such lots as I hold by that deed—but if I convey " lot No. 10, in Little Rock, which I hold by deed from A B," there the latter clause is mere explanation, and will be rejected if I do not hold the lot by such deed. And so it would be if I were to convey two hundred feet front, in block 10, running back at right angles, which I hold by deed from A B, and it appeared that I had two hundred feet front in that block, and no more, but that I only hold a part of it under the deed from A B, yet you would take the whole; for there too " the latter clause is but explanation," there being " sufficient certainty before."

In *Lawes vs. Beaston*, 5 *Taun.* 207, where the deed was for land lying in Camberwell, containing so many acres, and in the possession of A. B. and C., Lord MANSFIELD said, " this deed sufficiently shows the seller's intent to pass all these lands; it describes in whose possession they had been, and the number of acres, and therefore the lands do pass by the deed. No man can doubt of the intent of this deed to pass those lands. It has conveyed so many acres in the possession of A, B and C, the name of the parish only is mistaken, the party having been informed the land was in Camberwell. Why did the parties mention the parish at all in the deed? It was unnecessary."

So it is laid down in *Connolly vs. Vernon*, 5 *East*, 80, that "when there is a grant of a particular thing once sufficiently ascertained by some circumstances belonging to it, the addition of an allegation, mistaken or false, respecting it, will not frustrate the grant."

The same rule has been often affirmed in the United States.

In *Worthington vs. Hylyer*, 4 *Mass*. 205, Parsons, C. J. said, "if the description be sufficient to ascertain the estate intended to be conveyed, although the estate will not agree to some of the particulars in the description, yet it shall pass by the conveyance, that the intent of the parties may be effected. Thus, if a man convey his house in D, which was formerly C's, when it was not C's but B's, the house in D shall pass, if the grantor had but one house in D, because by the description of his house in D, his estate intended to be conveyed is sufficiently ascertained."

So in *Bott vs. Burnell*, 11 *Mass*. 167, the court said "general words are not restrained by restrictive, added *ex majori cautela*, or by affirmative words more restrictive; but which have no tendency to render a general description ambiguous or uncertain."

The case of *Cutler vs. Tufts*, 2 *Pick*. 272, would be conclusive, even if we had no other case to sustain it. By the deed in that case, the grantor conveyed "all his right and title and interest in and to one undivided moiety or half part of certain real estate, situate in the towns of West Cambridge, Lexington, and Cambridge, the same being a part of the real estate of the late William Cutler, deceased, and set off as dower to the widow, Rebecca Cutler." Had the description stopped here, say the court, no question "could have arisen which could not have been settled by the records of the Probate office showing what lands had been set off for dower to Rebecca Cutler." But a clause was added which produced the controversy, viz: "meaning hereby to reconvey to said Cutler the same premises, with their appurtenances, that the said Cutler conveyed to me, by his deed dated Sept. 25, 1811." This latter clause conflicted with the former. It was doubtful whether it would not reduce the moiety to a fourth part. And the court said, "is not this repugnant? And if it is so, then most clearly, by reason as well as by the authorities, the latter clause ought to be rejected. It is not an explanation, but a direct contradiction.

The words cannot stand together, and the grantor shall not have the benefit of such an unjust interpretation of words, which he has himself introduced into the instrument, as would give him the right to destroy his own grant." See this case confirmed in *Sprague vs. Shaw*, 4 *Pick.* 54.

So in *Jackson vs. Clark*, 7 *J. R.* 217, the rule is laid down to be that "if there are certain particulars once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance false or mistaken, will not frustrate the grant." And see *Jackson vs. Moore*, 6 *Cow.* 717.

In *Jackson vs. Root*, in which case the deed was for " the 600 acres of land due me from the public, as a soldier in Col. Lamb's regiment of artillery," the rule laid down in *Jackson vs. Clark* was affirmed. The grantor was not a soldier in Col. Lamb's regiment, but in another and different regiment; and the latter clause was rejected because there was sufficient certainty before, as he owned 600 acres of land by grant from the public.

In *Jackson vs Loomis*, 18 *J. R.* 84, the same rule was again affirmed; and also in *Jackson vs. Crafts*, 18 *J. R.* 107, where there was a mistake in the number of the lot conveyed.

We have been arguing this matter, thus far, upon the hypothesis and assumption of opposing counsel, that the words " which said tract," in the reference to the deed of July 13, 1825, are intended to designate the tract which he was conveying to Kendrick and Fisher. We now proceed to show that this is but a hypothesis; and we assume and think we can demonstrate that Phillips did not refer to the deed of July 13th in order to designate the land he was conveying to Kendrick and Fisher, but in order to designate the whole tract of which that was a part; and that he referred to it as a deed whereby the whole Cassidy tract was conveyed to him by Russell. In order to explain our meaning it will be necessary to quote the whole of the grant, which is as follows:

" Also one other tract, containing three hundred and sixty-six acres of land, being part of a six hundred and forty acre tract, originally owned by Patrick Cassidy, and confirmed to Wm. Russell under Patrick Cassidy, and patented by the President of the U. States to Wm.

Doe, ex dem., Phillips' heirs, *against* Benjamin A. Porter, et al.

Russell under Patrick Cassidy, and to his heirs, by patent, recorded in the General Land Office in vol. 4, pages 243 and 244, and dated the 26th day of March, 1824, which said tract of land was conveyed by William Russell to Sylvanus Phillips, by deed bearing date the 13th of July, 1825, situate in the county of Phillips, and Territory of Arkansas, adjacent to the town of Helena."

It is admitted by all, that whether the expression "which said tract" refers to the first tract mentioned, or to the second, there is a like mistake, because the deed of July 13, 1825, neither conveys 366 nor 640 acres—nor is it a deed conveying but one tract, as would appear by the reference, but it conveys two, and 355 lots in the town. As upon either construction it is manifest that Phillips had forgotten what the deed of July 13 did convey, we are equally at liberty to suppose that he thought it conveyed the whole Cassidy tract, as that he thought it conveyed but one tract alone, or a tract of 366 acres. More so, indeed, because every deed is to be taken most strongly against the grantor.

But we cannot found a legal conclusion on a mere hypothesis that he had forgotten one thing and not another, or that he was mistaken in one respect rather than in another. We must construe the grant by legal rules, and as no construction can make the reference to the deed of July 13th correct, we must take the grant by itself, and ascertain what would be its construction standing entirely alone, and without our knowing what was in fact conveyed by the deed of July 13, 1825.

First, then, we understand it to be a general rule of law, as well as of grammatical construction, that when the word "said" is used, and there are two precedents to which it would apply, it has relation to the one next preceding it. Thus in the *Queen vs. Holford*, 3 *Salk.* 199, which was an information against the defendant for subornation of perjury, setting forth " that whereas in the court of our lord, the King, before the King himself at Westminster, in the county of Middlesex, one Rhodes, lately of D, in the county of Surry, had impleaded the defendant, Holford, for that whereas he was indebted to the plaintiff, in the parish of St. Clement's Danes, in the county aforesaid," and on arrest of judgment, it was contended that the cause of action was laid in Surrey; and the rule is thus laid down: " It is true, it is

6

said, that the defendant was indebted to the plaintiff in the parish of St. Clement's Danes, in the county aforesaid, which must be the county of Surrey, because that was the county last named, and therefore it must relate to that county, which is very true, viz: *ad proximum antecedens fiat relatio;* but that rule hath an exception, viz: *nisi impediat sententia,* as it plainly doth in this case.

In the present case the rule applies to the full extent, because by applying the rule the sense is no way impeded; or rather, because the meaning of the sentence doth not hinder the application of the rule.

Second. These words are naturally connected with those immediately preceding them, and a description is commenced, which, unless they form part of it, is incomplete. Take the grant by itself, without reference to any thing extrinsic, and we find that it first conveys 366 acres of land. The tract so conveyed is stated to be part of a 640 acre tract, and here the description stops, and a description of the whole commences, and of the grantor's title to it. The 640 acre tract is, it is stated, a tract originally owned by William Russell under Cassidy, and confirmed to said Russell under Cassidy, and to his heirs, by patent bearing date a certain day and year, and recorded in a certain book and page. Does the description of the whole tract cease here? If it does, why was the grantor so particular in stating Russell's title to it? It is perfectly clear that the grantor still goes on to complete what he had begun, by deducing to himself title through Russell to the whole tract. Put the whole sentence before any man who has a common acquaintance with language, without informing him of the contents of the deed of July 13th, and he would at once say it is all a description of the whole tract, for it cannot be construed otherwise without doing violence to every rule of grammatical construction.

Observe then further the conclusion of the sentence. Connect it as it stands; " which said tract of land was conveyed by William Russell to Sylvanus Phillips, by deed bearing date July 13, 1825, situate in the county of Phillips, and Territory of Arkansas, adjacent to the town of Helena." Now if both parts of this clause refer to the same tract, it would have read " which said tract was conveyed, &c., and is situate," &c.

But read it as we contend it should be read—put within a parenthe-

sis all the sentence from "being part," to "July, 1825," inclusive, and the whole sentence is perspicuous, clear, and drawn with sufficient attention to legal accuracy. Coustrued differently, no sentence could be more inartificial and clumsy.

How then did the idea ever originate that this expression in the latter part of the grant referred back to the first tract named, passing by one intermediately named? Manifestly it is a mere notion, taken up without thought, and entertained from the sheer necessity of the case; and because, unless some such hypothesis was assumed, their claim, shadowy and unsubstantial enough at the best, would at once drift away from them, and dissolve into thin air.

If they travel out of the grant, and allege that the expression refers to the tract first named, because the deed of July 13th does convey part of the 366 acres—still the consequence they desire does not follow—because the same deed also conveys a part of the whole tract—and in either aspect he was mistaken. Admit then that the sentence might even be construed either way, and yet our construction must prevail, because it is most strongly against the grantor.

The whole argument of the appellants then has no basis; for if the expression "which said tract," and the reference to the deed of July 13, do not relate both to the tract intended to be conveyed by Phillips, but to the whole tract, of course the reference does not qualify or limit, or even explain the grant by quantity; and then, if the grantor owned the quantity of acres granted in that particular tract, and no more, as he did, the grantee takes by quantity.

TRAPNALL & COCKE, in response:

It is not our intention to controvert the correctness of two rules, laid down by the plaintiff in the opening of his argument, for our direction in the construction of deeds. It is by the application of the first rule that we believe ourselves warranted in coming to the conclusion that the fraction in controversy was not conveyed by the trust deed; we must, however, express our dissent, if by the second rule counsel for the defendants intend to convey the idea that the courts will, in every instance, where there is a contradiction in a deed, or where a skilful casuist may raise a doubt, adopt a construction most unfavora-

ble to the grantor. If in any instance the court can, by the application of those rules by which we must be guided in the construction of deeds, arrive at the intention of the parties, they will give effect to that intention, although there may be much in the deed obscure and contradictory. The rule above referred to only applies in those instances where it is impossible to arrive, by any of the ordinary rules of construction, at the intention of the parties, and is most frequently applied in those cases where a doubt is raised whether any estate at all passes or not, or when doubts exist as to the quantity of estate, whether for years, for life, or in fee. In these instances, rather than the grant should be frustrated, the court would presume against the grantor, and adopt such construction as would give effect to the deed, and not such an one as would make it a nullity. So if there be an estate granted without any limitation as to time, or if the quantity of estate is uncertain and cannot be determined by the words of the deed itself, then the courts would construe it most favorably to the grantee and he would take the greater estate.

We cannot perceive that this rule can rightfully have any material bearing upon the question now in issue, which is simply whether the fraction in controversy is embraced in the tract conveyed by the trust deed or not; and that is to be determined by the description of the tract contained in the deed itself. If by applying the legal rules of construction to the circumstances set out in the deed as descriptive of the tract, it shall appear that it was not the intention of Phillips to include it in the trust deed, then the plaintiffs will be entitled to recover; if on the contrary it shall appear that it was his intention to embrace it, then their claim must fail. We are then brought back again directly to the question, what circumstance referred to in the trust deed, descriptive of the land, is entitled to the most weight and consideration according to the received and well settled rules of legal construction? Is it in the description by number of acres, or by reference to the deed of the 13th of July? It is unnecessary to refer again to the authorities, showing the weight and influence of these different circumstances in the scale of construction; those already quoted are ample and to the point.

Nor do we think the position we have assumed in regard to the ef-

fect of recitals in the deed, in the least shaken by the arguments of defendants' counsel. It is true that some of the cases referred to were suits in chancery, but others were actions at law; and the court will find, by reference to all the cases cited, that the *principle* is the same, both in law and in equity. The defendants' counsel very readily admits that the recital of one deed in another binds the grantor, but is unwilling to hazard a conjecture as to its effect upon the grantee. Had he examined the case of *Carver vs. Jackson, ex dem., Astor, et al.,* he would have found the principle stated so clearly as to leave no room for conjecture. In that case, page 83, it is laid down, that a recital of one deed in another binds the parties, and all those who claim under them. The grantor and grantee are evidently alike embraced within the rule. They are the parties to the deed. Thus we say, that Phillips and Kendrick and Fisher were all bound by the recital in the trust deed of the deed of July 13th: by reference to that deed the boundaries of the land can be definitely ascertained, and if it had embraced a thousand acres instead of 366, still it would have been obligatory on Phillips, and neither he or his heirs could have recovered one acre of the surplus; and so if it contains less, Kendrick and Fisher, and all those who claim under them, are estopped by it, and cannot set up claim to a single acre not embraced in that deed. The counsel for the defendants says, " that the land is first conveyed by quantity—so many acres in such tract." If the court will look to the phraseology of the deed they will find that this is mere assumption. The language of that instrument is, " also, one other tract containing 366 acres." It is the conveyance of a certain tract, and not a definite and certain number of acres " in such a tract." And the authorities already referred to, show conclusively the statement of the number of acres in such cases is merely matter of description, and is never regarded as a grant of a defined and certain quantity, except in those instances where there are direct and positive covenants to that effect. But because the deed of July 13th conveys one fraction of 340 acres, and one of 18, and 335 town lots, the plaintiffs contend that this reference does not render that certain which before was uncertain, but directly the reverse; and that it would be impossible to tell whether the 340, or the 18 acres, or both

were on the town lots. Whatever credit such reasoning may have for its subtlety and ingenuity, it certainly cannot be regarded as sound and practical, for who ever heard of town lots being described and designated as a certain tract of land? As both the fractions were conveyed by the same deed, Phillips may very well have fallen into the mistake of calling them one tract. And the court might, as against Phillips, very correctly decide, that all the land to which he acquired title by that deed, should pass, so to as make up as nearly as possible, if not altogether, the specified number of acres.

But suppose the mistake should be fatal to the construction for which we contend, would it not fall with a more crushing weight upon the construction contended for on the other side? For if they be regarded as separate tracts, their construction would embrace four instead of two. If the term, one other tract, is likely to raise a doubt as to whether the two fractions in the deed of the 13th of July pass or not, be it so. We might plausibly contend that only one did pass, and that the description by number of acres, though not exactly accurate, would yet sufficiently manifest that it was the intention of the grantor to convey the largest fraction, and thus restrict the grant to the 340 acres. We might suggest other reasons in support of this view, but as the question is not before the court, we will not further pursue it.

We cannot conceive how the argument of counsel can be strengthened by the fact, that both the deed of the 13th of July and first of August, were acknowledged on the 15th of August. The deed is referred to by the date it bears, and not by the date of its acknowledgement. And if this circumstance can make any figure in the cause at all, with all due deference we think it must be in our favor.

If he had intended to convey all those fractions, he would perhaps have referred to the date when those deeds were acknowledged, and declared that the land was the same embraced in the deeds of that date. But he is particular to designate the deed by the day it bears date, thus excluding the idea that any thing more was intended than the land embraced in that particular deed.

Counsel for defendant have endeavored to point out, by reference to

numerous authorities, the distinction between a limitation or restriction in a deed, and an explanation, and to show what words will be regarded as words of restriction, and what as words of explanation. It would protract this argument to too great a length were we to examine each separate authority cited. We must, therefore, content ourselves with examining a few. of the most prominent.

We will remark in the outset, that all the decisions upon this point have been made in those cases where the question was, whether the grant should entirely fail or not; and in those cases the courts have decided that, where the thing to be ascertained has once been truly described by words sufficient to ascertain and identify it, it shall pass, although there may be added an explanation that is false.

Suppose we admit, for the sake of the argument, that the reference to the deed of July is. but an explanation, and not a restriction, we have yet to find the first case in which the courts have gone so far as to reject the explanatory words when there was a subject matter upon which the grant could act, and when the question was not whether the grant should entirely fail, but to which of the several things did the grantor intend it to apply. The distinction, it is important the court should keep in view. The authority quoted in *Comyn's Dig.* *F. E. 4*, very clearly illustrates the truth of the distinction: " if the thing described *is sufficiently ascertained it is sufficient, though all the particulars are not true; as if a man conveys his house in B which was Thomas Cotton's, and in fact it was not, it will pass.*" But suppose he had two houses in B, one which had been Thomas Cotton's, and one which had not, and a question should arise which house was was intended by the grantor, would the courts reject the explanation? Or would they not rather look to it as a decisive feature in the description? Suppose A should convey a tract containing two hundred acres of land, lying in Pulaski county, which said tract was lately in the occupation of B, and conveyed to him by B, by deed bearing date the 13th of July, 1825, but in fact there should turn out to be but 190 acres; A also had other tracts of land in the same county, lying adjacent to the one sold, to which he had acquired title by deed from various other persons, would the court, in seeking to ascertain and

identify the tract, reject those latter words altogether, even though they might regard them as words of explanation, and permit the grantee to claim and hold land lying without the tract, not conveyed by B, nor included in the deed referred to, to make up his 200 acres? In the case referred to in *Worthington vs. Hylyer.* 4 *Mass.* 205, the court lays a particular stress upon the circumstance that the grantor had but one house in D, evidently implying if he had more, and one had in truth been in the possession of C, that circumstance must be looked to to determine which house was granted. A great deal of authority has been adduced to show that a false addition will not vitiate or frustrate the deed if there has been sufficient certainty before. I must here again press upon the court the fact, that the question is not whether the deed shall be frustrated, but it is to what lands does it apply. And the court will also remark, that what is regarded as an addition here, is not a false circumstance, but it is true that there was a deed from Russell to Phillips, bearing date of the 13th of July, 1825, conveying to him a tract of land, part of the 640 acre tract patented to William Russell, and the falsity is not in that reference, but the mistake consists in supposing the land conveyed by that deed to contain 366 acres. Now, even according to the argument of the defendants' counsel, Russell had more than one tract or parcel of land comprehended in the 640 acre survey. To these he acquired title by deeds of different dates—he conveys one tract containing 366 acres, and refers to the deed of 13th of July as limiting the grant to the lands therein contained, or as explaining, I care not which, with more precision and certainty the particular tract conveyed, will the court now say, when this explantion is true, and there is a subject upon which the grant shall act, that they will attach no weight, in ascertaining the intention of the parties, to those circumstances to which they have themselves expressly referred to illustrate their intentions, and say that they meant to convey *all the* lands acquired by deed of the 1st of August, when they have themselves declared it was only the tract conveyed by the deed of the 13th of July?

But the counsel for the defendants seems to regard the reference to the deed of July as merely an addition, and that because 366 acres are not contained in the tract granted in that deed, that it is therefore

a false addition. It is evident they have fallen into this error from the common notion that that which comes last is an addition to that which was first. But this is certainly not the legal and technical sense of the term. "If there is an error in the principal description of the thing intended to be granted, though there be no error in the addition, nothing will pass." 4 *Com. Dig.*, *note A*, and the example cited in illustration of the rule is from *Bac. Tra.* 165. That if a person grants *tenementum suum*, or *omnia tenementa sua*, in the Parish of St. B. *without Aldgate*, where, in truth, it is without Bishopgate *in tenura Gulielmi A*, which is true, yet the grant will be void because that which sounds in denomination is false, which is the more worthy, and that which sounds in addition is true, which is the less. And though the words *in tenura Gulielmi A*, which is true, had been first placed, yet it had been all one. Now we venture to affirm that no case can be found in which the mention of the number of acres will be regarded as constituting any part of the denomination, but the cases to which we have already adverted abundantly show that it is always looked upon as addition. If it was considered as denomination, then it would be fatal in all those cases in which the quantity has been falsely stated in the deed, for a misdescription in that respect, as we have seen, will defeat the grant altogether. We donate land not by the quantity of acres, for that would designate no particular land, but by reference to its natural boundaries, its situation in counties, and the township, and range, and section, by reference to patents and deeds by which its locality can be definitely ascertained and fixed in the general map and survey of the country. The circumstances of denomination in this deed are, first, that it is a tract of land in the 640 acre tract patented to Wm. Russell, under Patrick Cassidy, by patent bearing date, &c., and which said tract is the same conveyed, by deed of 13th July, by Russell to Phillips. The number of acres, although it may come first, is but addition. Suppose Phillips had not owned a foot of land in the 640 acre tract, and no land contained in the deed of 13th July, would it for a moment be pretended that the grant would operate upon other lands which he might own elsewhere? Would not the grantee be put to his action upon the covenant in the deed to recover any damages he might sus-

7

tain? Are not these the features of the description which are the more worthy? They are the terms of denomination. It is by these that the land is known and denoted. In examining the authorities it will be perceived that the distinction drawn between the individual instances, put in illustration of general rules, is often extremely subtle and refined, depending upon a very slight change in the phraseology. Hence there is great danger of falling into error, unless we note with the most exact critical attention the peculiar structure of the sentence in each individual case, and the particular change of phraseology which gives rise to the distinction. It does seem to us that counsel for the defendants has fallen into many material errors from not having observed this rule with sufficient care.

Many of the cases which they have cited from the authorities, and the instances put by themselves to illustrate the construction for which they contend, are liable to the weighty objection of not being analogous in point of fact to the case presented before the court. The peculiar phraseology and structure of the sentence do not exist in this case which gave rise to the rule of construction under cover of which the defendants now seek to shelter their claim.

The case referred to in 4 *Cruise*, 337, with so much emphasis, furnishes an instance of this error. When the lands are " first described generally, and afterwards a particular description is added, that shall restrain the general words. Thus, if a man grants all his land in D, which he has by gift and feoffment of J. S., nothing will pass but lands of the gift and feoffment of J. S. But if he grant all his lands in D called N, which was the estate of J. S., the lands called N shall pass though they never were of the estate of J. S." Let us examine the latter clause of this sentence, and extract from it the reason of the rule. The court will perceive that " all the lands in D called N" are the subject matter of the conveyance, and the deed first grants all those lands absolutely, the addition therefore of the clause, " which was of the estate of J. S." will not vitiate because the lands which were of the estate of J. S. did not form the subject matter of the conveyance, but was introduced merely as an additional circumstance descriptive of those lands. The phrase " all the lands in D called N," sounding in denomination would, as we have before shown, be

regarded as the most worthy, for it is evident the grantor intended to convey all those lands known by that denomination, and whether they were of the estate of J. S. or not, is immaterial, because that was an addition, with a view of giving a more definite description to the land, and not a statement of the thing itself to be conveyed. If the deed from Phillips to Kendrick and Fisher had said, also all the land containing 366 acres, &c., then there might have been some plausibility in the argument of defendants' counsel, and some apparent support from the authorities. Then, the subject matter of the conveyance, that which sounded in denomination, would be all the land which Phillips owned in the 640 tract patented to Wm. Russell, &c., &c., and whether the land was acquired by deed of the 13th of July, or by other deeds, would not be material, inasmuch as the grant was of all the land forming a part of the 640 acre tract. But the language of the deed is very different. It is, " also one other tract," evidently showing it was his intention to convey only a part, and not the whole, and the reference to the deed of the 13th of July was for the purpose of ascertaining and identifying more certainly the particular parcel Phillips intended to convey out of the several parcels owned by him in the 640 acre tract. If we were to change the example quoted from Cruise so as to make it analogous to the case before the court, it would read " also one other tract containing 366 acres in D, called N, which was the estate of J. S." To make the parallel complete, suppose the grantor had several tracts in D. called N, one of which was of the estate of J. S. Should the question arise whether the deed conveyed all the tracts in D, called N, or not, would the court hesitate in confining the grant to the tract which was of the estate of J. S.?

The case of *Cutler vs. Tufts*, 3 *Pick*. 272, is referred to with much confidence by counsel for the defendants, but we feel convinced when the case is critically examined, it will be found to turn upon a principle which can have no application to the question before the court, and that it also presents a state of facts materially different from those of the case under consideration. The court will find in the case referred to, that the grantor first conveyed an estate absolutely. The estate so conveyed was so clearly and certainly described as to leave no doubt of its identity. In the subsequent part of the deed a clause was

added, by which a large portion of the estate conveyed was defeated, and the case turned upon the well settled principle, that one shall not destroy his own grant.   The court expressly declare that the clause added is not an explanation, but a direct contradiction.   It was in a distinct sentence, and formed no part of the description of the estate previously granted.   Such, however, is not the case with the deed now under consideration.   It is all one continuous and connected sentence.   The thing to be conveyed is a certain tract of land.   The number of acres and the patent and deed referred to, are all introduced to describe and identify this tract.   And the true question which arises upon this deed is, as we have already stated, whether the description by quantity of acres, or by reference to the deed of 13th of July, shall govern.   It cannot be said that the reference to that deed defeats an estate already granted absolutely, and fully described and ascertained, for the description of the estate flows on continuous and unbroken even to the end of the sentence.   The most that can be said is, that in the particulars, which make up the description, there is some mistake or disagreement, and then the rule which we have already insisted upon applies.   That which is most permanent and certain shall control that which is less.   Indeed the argument of counsel seems to proceed upon an assumption of the very point in dispute.   Assuming that the trust deed conveys, absolutely, the four tracts or parcels remaining of the 640 acre tract, although the language of the deed expressly restricts the conveyance to one, they then go on to reject altogether the reference to the deed of the 13th of July, because it defeats a part of the estate they imagine already conveyed.   On the contrary, we insist the reference to this deed is not repugnant to, or contrary to any which preceded it: it does not defeat an estate already granted, but it ascertains and fixes the estate actually conveyed.   We have heretofore shown that the enumeration of quantity is regarded as description, unless there are direct and special covenants to convey a specified quantity; and the counsel for defendants, seizing upon the description by number of acres, regarded by all the authorities as the lowest and least to be relied upon, endeavor to give it precedence over that description esteemed the highest and most conclusive.   There is only one other argument which we deem it

Doe, ex dem., Phillips' heirs, *against* Benjamin A. Porter, et al.

necessary to notice, and that is, that the words, " which said tract,"
in reference to the deed of the 13th of July, 1825, were not intended
to designate the tract which Phillips was conveying to Kendrick and
Fisher, but that they referred to the 640 acre tract.  It does seem to
us an extraordinary stretch of the imagination to suppose for one mo-
ment that Phillips could have fallen into the mistake of believing that
he had acquired title to the whole 640 acres by the deed of the 13th
of July; more particularly so, as he never did acquire title to the
640 acres, as one connected tract, by any deed.  Some time before
the 13th of July, 1825, the 640 acre tract had been split up into
various sub-divisions; the town of Helena had been carved out of it,
and small fractions were left on every side, separated and disconnected
from each other, each forming a separate and independent tract of
itself.  So far as we can be guided by these material facts, in arriving
at the intention of the grantor, we cannot doubt but what the words,
"which said tract," were designed to refer to the first mentioned tract,
which formed the subject of conveyance.  We can much more
readily imagine that Phillips may have mistaken, by a few acres, the
contents of the tract conveyed by the deed of the 13th of July, than
we can suppose that he had fallen into the very gross error of be-
lieving that he had acquired title to the whole 640 acre tract by that
deed.  Nor can we regard as entitled to much weight, the argument
drawn from the grammatical structure of the sentence.  In construing
deeds, the courts will not defeat the obvious meaning and intention of
the parties, by a too rigid adherence to the nice rules of grammatical
construction.  Even the example quoted, so far from establishing any
fixed and inflexible rule, shows clearly that the court will direct the rela-
tive pronoun either to the first or last mentioned subject, as its antece-
dent, accordingly as the sense of the sentence may direct.  Were the
sentence correctly marked and punctuated, all that part of it beginning
with " being part of a six hundred and forty acre tract," down to
"March, 1824," inclusive, would be included in a parenthesis, and
indeed the whole of it might be stricken out, and yet the deed
would be equally certain and definite.  It contains no description of
the particular tract granted, but breaks the connection of the sentence
for a moment to insert a description of the entire original tract, of

which the one granted constitutes a part, and that description ends at "March, 1824." The original connection of the sentence is then resumed, and it proceeds on to complete the description of the particular tract which forms the subject of the conveyance. But the opposite counsel insist that the description of the 640 acre tract does not end until it reaches "July, 1825;" and that the parenthesis should be extended so as embrace those words; and the reason assigned is, first, that as Phillips had commenced by setting out Russell's title to the 640 acres, we must presume that it was for the purpose of deducing to himself, through Russell, title to the whole tract. Now we would ask if it was necessary that Phillips should make out title in himself to the 640 acre tract to enable him to convey the fraction granted in the trust deed? Most clearly it was not. It is sufficient for the purposes of the conveyance, to show title in Russell for the 640 acres, of which this fraction forms a part, and then a deed from Russell to Phillips for this part, which is done by reference to the deed of 13th July. No man can read the sentence without seeing that the description of the 640 acre tract, and the statement of Russell's title to it, ends with "March, 1824," and that the sentence returns at that point from the digression, to resume the description of the particular tract granted. This view gives additional strength to the construction for which we contend, and shows most clearly that the deed of the 13th of July forms an important and indispensable link in the chain of the defendants' title; strike out this link and the chain which unites their title to that of the original patentee is broken forever. They cannot trace a regular and connected title back to the original grantor, but by and through the deed of the 13th of July. Will the court permit them, when it becomes necessary to trace back their chain of title to the patent, to avail themselves of the benefit of this deed, and yet disregard and reject it altogether from the description, when it may suit their purposes to do so? We cannot believe the court will tolerate so whimsical and capricious a construction. The other argument for extending the parenthesis to "July, 1825," is founded upon a trifling grammatical inaccuracy, such as can have no material weight in the cause. If such refined and fastidious criticisms are to prevail—if the obvious intention of the parties is to be defeated, be-

Doe, ex dem., Phillips' heirs, *against* Benjamin A. Porter, et al.

cause the draftsman of the deed has used a verb in the wrong tense, or omitted altogether the auxiliary verb—then, there is not a man in this state who does not hold his land by a title frail and precarious indeed.

Lacy, *Judge*, delivered the opinon of the court:

The question now submitted for adjudication lies within a very narrow compass. It is, nevertheless, a question of considerable magnitude and interest, and one of no ordinary difficulty. Here we have given to the whole subject, and to every part of it, a most patient and full investigation.

Both parties claim title to the land in controversy, under Sylvanus Phillips ; the lessors of the plaintiff, as his legal heirs and representatives; the defendant in the action, as a purchaser, for a valuable consideration, from his immediate grantees. The law was adjudged below in favor of the appellee, upon an agreed case. That judgment is now brought before the court by appeal, for revision and correction.

The whole case turns upon the construction of the deed from Sylvanus Phillips to Austin Kendrick and Arnold Fisher, bearing date the 1st day of October, 1830; and the question now to be decided is, what number of acres does that deed convey? The deed embraces a great variety of clauses, conveying different tracts of land, and it uses the same terms of description and limitation in regard to them all. It first states the number of acres contained in each tract, and it afterwards refers to and recites the particular patent and grant under which Phillips derived title. The words of the deed are, " the party of the first part have granted, bargained and sold, and by these presents do grant, bargain and sell unto the party of the second part, and to their heirs and assigns forever, the following described tract, containing three hundred and sixty-six acres of land, being part of a six hundred and forty acre tract originally owned by Patrick Cassidy, and confirmed to William Russell under Patrick Cassidy, and patented by the President of the United States to William Russell, and his heirs, on the twenty-sixth day of March, one thousand eight hundred and twenty-four, which said tract of land was conveyed by William

Russell to Sylvanus Phillips, by deed bearing date the thirteenth day of July, one thousand eight hundred and twenty-five, situate in the county of Phillips and Territory of Arkansas, adjacent the town of Helena."

It is conceded on all hands that the true construction of this deed will determine the rights of the parties to this suit. If the deed conveys 366 acres to the grantee, then the law, arising upon the agreed case, is unquestionably for the defendant. But on the contrary, if it only conveys 358 acres of land, the exact quantity or number of acres included in Russell's deed to Phillips, of the 13th of July, A. D. 1825, then it is evident that the lessors of the plaintiff are entitled to a recovery of the premises in question.

The construction of the grant above quoted has been discussed with much ability and learning by the respective counsel engaged in the cause, and we have derived no inconsiderable aid and assistance in the formation of our opinion, from their logical and demonstrative arguments.

In the construction of deeds, says Lord MANSFIED, the rules applicable to such instruments are accurately laid down and defined by all the authorities; and they rest for their foundation and support upon reason, justice, law, and common sense. We shall, in the present instance, only state a few of them, and such as we deem to have a direct bearing on the case under consideration.

1st. All deeds shall be construed favorably, and as near the intention of the parties as possible, consistent with the rules of law. *Cruise Dig.* 4, 202; *Bridge vs. Wellington,* 1 *Mass. Rep.* 219; *Worthington, et al., vs. Hylyer, et al.,* 4 *Mass. Rep.* 202; *Ludlow vs. Mayer,* 3 *J. R.* 383; *Troop, et al., vs. Blodgett,* 16 *J. R.* 172.

2nd. The construction ought to be put on the entire deed, and every part of it. For the whole deed ought to stand together, if practicable, and every sentence and word of it be made to operate and take effect. 4 *Cruise Dig.* 203, *section* 5, and authorities above cited. *P. W'ms* 497, *Vaugh* 167.

3rd. If two clauses in a deed stand in irreconcileable contradiction to each other, the first clause shall prevail, and the latter shall be re-

Doe, ex dem., Phillips' heirs, *against* Benjamin Porter, et. al.

garded as inoperative. 4 *Cow.* 248; *Mard.* 94; 6 *Wood.* 107; 4 *Comyns Dig.*, *title Fait.*

4th. The law will construe that part of a deed to precede which ought to take precedence, no matter in what part of the instrument it may be found. 6 *Rep.* 38 *b.; Cromwell vs. Crittenden,* 1 *Ld. Raym.* 335; 10 *Rep.* 8; *Buls.* 282.

5th. All deeds shall be taken most strongly against the grantor. For the principle of self interest will make men sufficiently careful not to prejudice themselves, or their rights, by using words or terms of too general or extensive a signification. 4 *Comyns Dig. title Fait;* 4 *Cruise,* 203, *sec.* 13; 8 *J. R.* 394; 16 *J. R.* 172; *Adams vs. Frothingham;* 3 *Mass. Rep.* 352; *Watson, et al., vs. Boylston,* 6 *Mass. Rep.* 411. These rules are now regarded as maxims in the science of the law, and they are perfectly conclusive of the points to which they apply.

In all conveyances the grantor must describe the thing granted with sufficient certainty to ascertain its identity. And if he fails to do so, the grantee takes nothing, by reason of the uncertainty of the grant; for there being nothing for the deed to operate upon, of course nothing passes by it.

The most general and usual terms of description employed in deeds to ascertain the thing granted, are 1st, quantity; 2d, course and distance; and 3d, artificial or natural objects and monuments. And whenever a question arises in regard to description, the law selects those terms or objects which are most certain and material; and they are declared to govern in the construction of the deed. Upon this principle it is held that quantity must yield to course and distance, and that course and distance must give way to artificial and natural objects. These plain and salutary principles are fully sustained by all the authorities, as a reference to them will fully show. *Williams vs. Watts,* 6 *Cranch,* 148; *Shipp, et al., vs. Miller's Heirs,* 2 *Wheat.* 316; *Jackson vs. Barringer,* 15 *J. R.* 471; *Powell vs. Clark,* 5 *Mass. Rep.* 355; *Jackson vs. Hubble,* 1 *Cow.* 617. In *Jackson vs. Moore,* 6 *Cow.* 717, it is declared that not only course and distance must yield to natural and artificial objects, but quantity, being the least part of description, must yield to boundaries or numbers, if they do not agree.

8

And in *Mann vs. Pearson*, 2 *J. R.* 40, and in *Jackson vs. Barringer*, *J. R.* 472, it is laid down to be a well settled rule, that where a piece of land is conveyed by metes and bounds, or any other certain description, that will control the quantity, although not correctly stated in the deed, be the same more or less. And the example put by way of illustration is that if a man lease to another all his meadows in D. and S., containing ten acres, when, in truth, they contain twenty acres, all shall pass. · *Jackson vs. Wilkinson*, 17 *J. R.* 147. In *Powell vs. Clark*, 5 *Mass. Rep.* 356, the rule is thus stated, "in a conveyance of land by deed, in which the land is certainly bounded, it is very immaterial whether any or what quantity is expressed; for the description by the boundaries is conclusive." "And when the quantity is mentioned, in addition to a description of the boundaries, without any express covenant that the land contains that quantity, the whole must be considered as description."

It is a general rule, "if there are certain particulars once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant." "But when the description of the estate intended to be conveyed includes several particulars, all of which are necessary to ascertain the estate to be conveyed, no estate will pass except such as will agree to every part of the description." Thus, if a man grant all his estate in his own occupation, and in the town L, no estate will pass, but what is in his own occupation and in that particular town. The description of the tenements granted must, in such a case, comprehend all the several particulars and circumstances named, otherwise the grant will be void. 4 *Comyns Dig. Fait R.* 3; *Doughty's case*; *Jackson vs. Clark*, 7 *J. R.* 223; *Blange vs. Gould, Cro. Car.* 447, 473; *Jackson vs. Loomis*, 18 *J. R.* 84. But if the thing described is sufficiently ascertained, it shall pass, though all the particular descriptions be not true. For example, if a man convey his house in D, which was in the possession of R. C., when in truth and in fact it was in the occupation of P. C., the grant nevertheless shall be good. 5 *East*, 51, *Roe vs. Vaumer*. For it was sufficiently described by declaring that it was in the town of D. *Hob.* 171; *Bro. Abr. Grants* 92. Where there is error in the principal description of the thing in-

Doe, ex dem., Phillips' heirs, *against* Benjamin A. Porter, et al.

tended to be granted, though there be no error in the addition, nothing will pass. Thus, says Lord BACON, " if a person grants *tenementum suum* or *omnia tenementa sua* in the parish of St. B. without Oldgate, when, in truth, it is is-without Bishopgate, *tenura Gulielmi, A*, which is true, yet the grant will be void, because, that which sounds in denomination is false, which is the more worthy, and that which sounds in addition is true, which is the less. And though the words *in tenura Gulielmi A*, which is true, had been first placed, yet it had been all one." 3 *Rep.* 9; *Stukely vs. Butler, Hob.* 171; *Doddington's case Co. Lit.* 2, 32, 33.

Where lands are first described generally, and afterwards a particular description added, that will restrain and limit the general description. Thus, if a man grants all his lands in D, which he has by the gift and feoffment of J. S. nothing will pass, but the lands of the gift and feoffment of J. S. 4 *Comyns Dig.* 287; 4 *Cruise*, 325; 1 *J. C. R.* 210; 4 *Cruise*, 225; *Com. Dig. Parole A.* 23; *Bott vs. Burrell*, 11 *Mass.* 167; *Worthington vs. Hylyer*, 4 *Mass.* 205.

We will now proceed to construe the deed of Phillips to Kendrick and Fisher according to the principles here laid down and established. The deed does not create either an express or an implied covenant to convey an exact quantity of acres mentioned in the first clause of the sentence, unless the terms "one other tract of land containing three hundred and sixty-six acres," constitute such an agreement. Had the deed stopped here, there can be but little doubt that the grantor would have sold, and the grantees have taken the exact number of acres, as designated by these general terms. This it has not done, but it proceeds to add other words of greater certainty, and of more particular description, limiting and restricting their general meaning. The grant declares the premises sold to be the " said tract of land which was conveyed by William Russell to Sylvanus Phillips, by deed bearing date the 13th of July, 1825." Then the land sold and conveyed to Kendrick and Fisher is the same identical tract purchased by Phillips from Russell by deed bearing date 13th of July, A. D. 1825.

Here, then, the land is first described by quantity, and afterwards by boundary. That being the fact, the deed in question falls pre-

cisely within the rule—that the quantity must yield to the boundary—because the latter description contains greater certainty and materiality. Again, a particular description cannot be limited by general expressions. In the present instance, there is a general description, and then follows a particular description of the thing conveyed; and where that is the case, and the two descriptions contradict each other, the particular description shall prevail. No one can doubt but that Russel's deed furnishes a more accurate and particular description of the land conveyed than the simple affirmation that the tract contains 366 acres. Both parties fixed and agreed upon the metes and bounds of Russell's deed for the purpose of ascertaining the exact number of acres conveyed. For if this was not the case, why did they refer to that deed, and recite it in the grant. By incorporating it into their agreement, they made it a part of their covenant, and constituted it the governing consideration of their contract. It is no answer to this argument to say that Russell's deed to Phillips lacked certainty in description, and therefore its recital in Phillips' deed to Kendrick and Fisher cannot render that certain which is in itself vague and doubtful. It is true that the deed conveys 335 town lots, a fraction of 18 acres, and 340 acres. The deed recited contains sufficient certainty to ascertain the quantity conveyed. The town lots are specifically described, and so are the 18 acre tract and the 340 acre tract. How then can the deed be said to want certainty in description? The two tracts of 18 acres and 340 acres do not amount to the 366 acres, but only to 358 acres. Russell's deed therefore only conveys 358 acres, and that being the case the fraction of 3.82 acres cannot be included within the grant made by Phillips to Kendrick and Fisher of October 1, 1830.

The town lots mentioned in the deed recited are surely not embraced in the term " one other tract of land," for in no point of view can it be considered as falling within that description or denomination. It is surely not a legal consequence that because Phillips was the owner of the entire residue of the original tract of 640 acres, after deducting from it that portion out of which the town of Helena was formed, that therefore he intended to convey the whole of that residue to Kendrick and Fisher, neither does this position follow, or is

strengthened by the fact that the two deeds of 13th of July and of 1st of August were recorded on the same day, to wit: on 13th of August, A. D. 1825.

Phillips' deed to Kendrick and Fisher, reciting Russell's deed to him, does not refer to the recording of that deed, but to the day upon which it was executed. The tract of land conveyed is then definitely described and ascertained by Russell's deed. The grantor and grantees are presumed to know the exact quantity of land contained within the limits of Russell's deed, and they both relied upon the estimation therein expressed. The grantee paid the purchase money for the number of acres contained in that deed, and the grantor parted with the premises there conveyed, according to its metes and bounds.

In construing the deed from Phillips to Kendrick and Fisher the court is restricted to the grant itself. For it contains no ambiguity or uncertainty upon its face. The intention of the grantor must be collected from the face of the deed, and not from any other foreign or extraneous matter contradicting that deed. " The recital of one deed in another binds the parties and those claiming under them." Technically speaking, it operates as an estoppel, and binds parties and privies—privies in blood, privies in estate, and privies in law. 1 *Phil. Ev.* 411; *Comyns Dig. tit. Evidence, B.* 5; 1 *Salk,* 285; *Jackson vs. Carver,* 4 *Peters,* 83; 2 *P. Wm's,* 432; *Willes* 11; 1 *Dallas,* 67; *Van Hoesen vs. Holley,* 9 *Wend.* Here the grantor and grantee, and all claiming under either of them, are bound by the recital. This recited deed, then, fixes and ascertains definitely the precise quantity of land, or number of acres sold and conveyed by Phillips' deed, bearing date 1st of October, A. D. 1830, to Kendrick and Fisher. That quantity consists of 358 acres and not 366 acres; and this being the case, it necessarily follows, from the facts admitted of record, that fractional C, as marked in the diagram, containing 3.82 acres, the land in dispute, was never sold and conveyed to Kendrick and Fisher, and consequently, they having no right to the premises, had no power or authority to pass the title of it to the tenant in possession. The maxim then, *caveat emptor,* expressly applies to his case, and he must look to his grantors for redress for the injury sustained.

The general terms used in Phillips' grant to Kendrick and Fisher

are restrained and governed by the recital of Russell's deed of 13th July, A. D. 1825.

First, because the description by quantity contains mere words of explanation or addition, and constitutes the lowest degree of certainty in ascertaining the land granted.

Secondly, because the general terms used in the deed are afterwards restricted and limited by an enumeration of particulars that definitely described the exact number of acres conveyed.

And lastly, because both the grantor and the grantees having recited another deed in the grant, they, and all claiming under them, are estopped from denying or questioning the conclusions or boundaries of the recited conveyance.

If the construction we have put upon the deed from Phillips to Kendrick and Fisher, of the 13th July, A. D. 1825, be the true rule upon the subject, then it necessarily follows that the instructions given to the jury by the court below were evidently erroneous. Therefore its judgment must be reversed with costs, and a new trial awarded, and the cause remanded, to be proceeded in agreeably to the opinion here delivered.